UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION CR06-10030 |
| VERSUS | JUDGE DEE D. DRELL |
| ANITA MORRIS | MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Anita Morris ("Morris") filed a motion to vacate, set aside, or correct sentence (Doc. 116) pursuant to 28 U.S.C. § 2255 on November 3, 2008, contesting her June 2007 convictions and sentences, entered pursuant to guilty pleas in the United States District Court for the Western District of Louisiana, on one count of bank fraud and one count of conspiracy to defraud the United States. U.S. v. Morris, 297 Fed. Appx. 375 (5th Cir. 2008). Morris was sentenced to a total of 33 months imprisonment, and is currently imprisoned in the Federal Correctional Center in Coleman, Florida ("FCC-Coleman").

The sole ground for relief raised by Morris in her motion is whether she had ineffective assistance of counsel at sentencing. Specifically, Morris contends the presentence report applied a two-level enhancement for fraudulent providers of financial

assistance or scholarship services pursuant to Section 2B1.1(b)(8)(D), although that section specifically states that it is not applicable to individual financial aid applicants.[1]

Morris raised the issue as to the applicability of the sentencing guideline enhancement on appeal, but the Fifth Circuit Court of Appeal declined to review it because the record was not sufficiently developed to evaluate the substance of the claim on direct appeal (Doc. 117). The Court of Appeal specifically reserved Morris' right to raise this issue in a Section 2255 motion.

The Law of §2255 Actions

There are four grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) the sentence was imposed in violation of the Constitutional or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack".

---

[1] This motion is before the undersigned Magistrate Judge for initial review. See 28 U.S.C. § 2255 and Rule 4(b) of the Federal Rules Governing Section 2255 Proceedings For the United States District Courts, which states in part, "If it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified. Otherwise, the judge shall order the United States Attorney to file an answer or other pleading within the period of time fixed by the court or to take such other action as the judge deems appropriate."

2

28 U.S.C. §2255; United States v. Cates, 952 F.2d 149, 151 (5th Cir.), cert. den., 504 U.S. 962, 112 S.Ct. 2319, 119 L.Ed.2d 238 (1992). The scope of relief under §2255 is consistent with that of the writ of a habeas corpus. Cates, 952 F.2d at 151. Also, U.S. v. Placente, 81 F.3d 555, 558 (5th Cir. 1996).

Relief under 28 U.S.C. §2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. Nonconstitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding. U.S. v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). Also, U.S. v. Ressler, 54 F.3d 257, 259 (5th Cir. 1995). A collateral challenge may not do service for an appeal. After conviction and exhaustion and waiver of any right to appeal, the federal courts are entitled to presume that the defendant stands fairly and finally convicted. U.S. v. Shaid, 937 F.2d 228, 231-32 (5th Cir. 1991), cert. den., 502 U.S. 1076, 112 S.Ct. 978, 117 L.Ed.2d 141 (1992). Even if a defendant raises a constitutional error, he may not raise an issue for the first time on collateral review without showing both cause for his procedural default and actual prejudice resulting from the error. U.S. v. Mimms, 43 F.3d 217, 219 (5th Cir. 1995), and cases cited therein.

A claim may not be reviewed under §2255 absent a showing of

cause and prejudice or actual innocence. U.S. v. Hicks, 945 F.2d 107, 108 (5th Cir. 1991). Moreover, a prisoner who shows the possibility of prejudice may not obtain collateral relief under §2255 without demonstrating cause for his failure to raise the error at trial or on direct appeal. U.S. v. Shaid, 937 F.2d at 229. The cause and prejudice test, however, does not apply to claims of ineffective assistance of counsel which are ordinarily brought for the first time on collateral review. U.S. v. Gaudet, 81 F.3d 585, 589 n.5 (5th Cir. 1996), citing U.S. v. Pierce, 959 F.2d 1297, 1301 (5th Cir. 1992). Also, U.S. v. Acklen, 47 F.3d 739, 742 (5th Cir. 1995).

Ineffective Assistance of Counsel

Morris argues she had ineffective assistance of counsel at sentencing because her attorney failed to object to the application of the U.S.S.G. § 2B1.1(b)(8)(D) offense level enhancement to her sentencing range calculation under the Sentencing Guidelines. Morris contends that enhancement does not apply to her because she did not act as a provider of financial assistance or scholarship services, but as an individual applicant for financial assistance and scholarships, and she made her fraudulent misrepresentations to a bank, a University, and the Department of Education, but not to any consumers.

An erroneous application of the sentencing guidelines does not

4

state a constitutional claim or a jurisdictional claim of error cognizable under § 2255; it is an application of statutory law. Grant v. U.S., 72 F.3d 503, 505-6 (6th Cir.), cert. den., 517 U.S. 1200, 116 S.Ct. 1701, 134 L.Ed.2d 800 (1996); U.S. v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). Also, U.S. v. Payne, 99 F.3d 1273, 1281 (5th Cir. 1996). Morris, however, is raising her sentencing claim in the context of ineffective assistance of counsel claims.

To establish that her legal representation at trial fell short of the assistance guaranteed by the Sixth Amendment, a convicted defendant must meet the two-pronged test set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). She must show that her counsel's performance was both deficient (i.e., that counsel did not provide reasonably effective assistance under prevailing professional norms) and prejudicial (i.e., that errors by counsel "actually had an adverse effect on the defense). The former component of the test authorizes only "highly deferential" judicial scrutiny, requiring the defendant to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. On the latter component, it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding; rather, she must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

5

Anderson v. Collins, 18 F.3d 1208, 1215 (5th Cir. 1994), and cases cited therein. Also, U.S. v. Segler, 37 F.3d 1131, 1136 (5th Cir. 1994).

In showing she was rendered ineffective assistance of counsel in regard to her sentence, Morris must show there is a "reasonable probability that but for trial counsel's errors the defendant's non-capital sentence would have been significantly less harsh; relevant factors are the defendant's actual sentence, the potential minimum and maximum sentences that could have been received, the placement of the actual sentence within the range of potential sentences, and any relevant mitigating or aggravating circumstances. U.S. v. Segler, 37 F.3d 1131, 1136 (5th Cir. 1994).

Morris received a two level sentence enhancement under the guidelines pursuant to U.S.S.G. § 2B1.1(b)(8)(D), which states:

> (8) If the offense involved (A) a misrepresentation that the defendant was acting on behalf of a charitable, educational, religious, or political organization, or a government agency; (B) a misrepresentation or other fraudulent action during the course of a bankruptcy proceeding; (C) a violation of any prior, specific judicial or administrative order, injunction, decree, or process not addressed elsewhere in the guidelines; or (D) *a misrepresentation to a consumer in connection with obtaining, providing, or furnishing financial assistance for an institution of higher education*, increase by 2 levels. If the resulting offense level is less than level 10, increase to level 10.

Morris contends this was error, since she did not misrepresent herself to a consumer, but to the bank and the university. Morris

assisted other individuals (including her co-defendants) to file

fraudulent applications for financial aid for college (Pell

grants[2]), then Morris and the person she assisted each kept part

---

[2] The Federal Pell Grant Program awards grants to help financially needy students meet the cost of their postsecondary education. 34 C.F.R. § 690.1, et seq. The provisions for the award and payment of Pell Grants, in 20 U.S.C. § 1070a, make it clear that the student is the payee and consumer of the grant money. Even when part of the grant is paid directly to the institution of higher learning, the money is held by the institution for the student's use and consumption.

The Pell Grant Program was summarized in U.S. v. St. Augustine, 1991 WL 222099 (N.D.Ill. 1991):

> "The Pell Grant Program (formally known as the Basic Educational Opportunity Grant Program) is authorized by Title IV-A, Section 411 of the Higher Education Act of 1965. The Program provides federal grants to financially needy, post-secondary school students. 34 C.F.R. part 690. The statute creates an entitlement program based upon student eligibility. 20 U.S.C. § 1070.
>
> "In order to participate in the Program, students must apply directly to the Secretary of Education or his "designated independent contractor." The contractor processes the application, which includes a student eligibility report ("SER"), and makes an initial determination of the student's eligibility based on the information submitted by that student. The contractor then issues to the institution an eligibility index for each eligible student indicating the grant level for which the student qualifies. The SER is reissued to the student.
>
> "Armed with the approved SER, the student can then receive grant funds provided that he or she is enrolled in a participating institution. The SER is presented to the institution, where the student's enrollment and eligibility status must be verified. Upon such verification, funds are disbursed to the students based on need. See e.g. United States v.

7

of the funds received for non-educational uses. The others Morris conspired with to obtain federal funds were aware they were doing so fraudulently. Morris did not purport to represent the university, nor did she direct that the grant money be sent to the university. As alleged by Morris, her presentence report added two points because "the defendant misrepresented herself and other individuals in securing financial assistance for Northwestern State University, an institution of higher learning." Morris

---

      Rowen, 594 F.2d 98, 99 (5th Cir.1979).
      "The distribution of Pell Grants is administered in large part by the institutions that participate in the Program. 34 C.F.R. 690.10; 34 C.F.R. 690.72. During the course of the year, the Department of Education sends funds to participating institutions based on an estimate of the institution's need for funds to pay eligible students. 34 C.F.R. § 690.74. The institution then calculates the amount of the Pell Grant to which each of the students is entitled according to the eligibility index report issued by the Secretary. 34 C.F.R. § 34 C.F.R. § 690.78."

In <u>U.S. ex rel. Gay v. Lincoln Technical Institute, Inc.</u>, 2003 WL 22474586 (N.D.Tex. 2003), aff'd 111 Fed.Appx. 286 (5th Cir. 2004), cert. den., 544 U.S. 1032 (2005), the court addressed false claims made by a technical institute and stated, "A participating school under an [Pell Grant Program] Agreement may request money from the DOE as federal grants for eligible students. The money is held in an institutional account to be dispersed to the eligible students. A student prepares an application for a Pell Grant which is submitted to the DOE either directly by the student or through the school. While there is little case law addressing this issue, it appears Pell Grant applications may be a 'claim' under the False Claims Act as to the educational institution as well as the student."

contends her counsel was ineffective because he failed to object to the offense level enhancement.

The sentencing guidelines do not provide a definition for the term "consumer." However, it appears from the wording of Guideline 2B1.1(b)(8)(D) that the consumer is the individual applying for the financial assistance, not the university. The financial assistance in this case was not *for* Northwestern State University; it was for the student/grant applicant, purportedly to aid him/her financially to attend the university. The student applies for and is awarded the grant money, and then "consumes" it by spending it at the University. The fact that the University was supposed to be paid by the student applicant with the grant money did not make the University the "consumer" of the grant.

The Merriam-Webster Online Dictionary defines "consumer" as "one that consumes: as (a) one that utilizes economic goods." Merriam-Webster Online Dictionary: Consumer*, available at* http://www.merriam-webster.com/dictionary/consumer. In this case, the "consumer" is the student-applicant/recipient of the Pell Grant money "consumes" the grant money by paying university bills with it.

Moreover, Guideline 2B1.1(b)(8)(D) states, "a misrepresentation to a *consumer* in connection with obtaining...

9

financial assistance for *an institution of higher learning*." If the U.S. Sentencing Commission intended the university to be considered the consumer, Guideline 2B1.1(b)(8)(D) would not have made a distinction between "consumer" and the "institution of higher learning" in the same sentence.

Finally, it is clear that Guideline 2B1.1(b)(8)(D) is intended to enhance a sentence to more severely punish those who intentionally mislead students and their parents, pretending to assist them while taking payments from them or misappropriating the federal funds intended to assist students in paying for higher education. Public Law 106-240, the College Scholarship Fraud Prevention Act of 2000, states that because "[a] substantial amount of fraud occurs in the offering of college education financial assistance services to consumers," the sentencing guidelines are to be amended to provide for enhanced penalties for such fraud, to be comparable to the base offense level for misrepresentation that the defendant was acting on behalf of a charitable, educational, religious, or political organization or a government agency. Examples of the fraudulent activities in connection with college education financial assistance services to consumers, which are listed in Public Law 106-240, are misrepresentations to consumers regarding the provision of sources

10

from which consumers may obtain financial assistance for a higher education, misrepresentations regarding the provision of portfolios for such assistance, misrepresentations regarding the pre-selection of eligible students, misrepresentations that such assistance will be provided to consumers who purchase specified services from specified entities, and misrepresentations regarding the business relationships between particular entities and entities that award such assistance.

The case at bar, however, is simpler than those examples. The defendant-applicant for the federal grant money used her own name and the names of her co-conspirators to defraud the federal government directly. Actual students were not involved and taken advantage of in this case.

Therefore, the two point offense level enhancement in Sentencing Guideline 2B1.1(b)(8)(D) should not have been applied to Anita Morris' sentence calculation. Counsel for Anita Morris clearly erred in failing to object to the two-point enhancement.

2.

Next, the court must determine whether the error is harmless. Relevant factors are the defendant's actual sentence, the potential minimum and maximum sentences that could have been received, and the placement of the actual sentence within the range of potential

sentences.

Anita Morris's total offense level calculation, as relied on by the court, was 20 and her Criminal History Category was I. At Offense Level 20, Criminal History Category I, the sentencing guideline range was 33 to 41 months. At the sentencing hearing, the district judge explained the guideline range, then sentenced Morris to 33 months imprisonment, the lowest sentence in that range. No reasons were given for imposing the lowest sentence in the guideline range.

Had Morris' total offense level been properly calculated at 18 (disallowing the 2 level enhancement under U.S.S.G. § 2B1.1(b)(8)(D)), the sentencing guideline range would have been 27 to 33 months. Therefore, the 33 month sentence imposed is still within the new range, but at the top of the new range. Since the district judge chose to impose the lowest possible sentence under the incorrect guidelines sentencing range, there is a reasonable probability that, had the district judge been aware of the correct guideline range, he would have imposed the lowest sentence in that range.

Therefore, there is a reasonable probability that, but for trial counsel's failure to object to the imposition of the two level offense level enhancement under Section 2B1.1(b)(8)(D),

12

Morris' sentence would have been significantly reduced. Since Morris has established both attorney error and prejudice arising from that error, she has proven that she had ineffective assistance of counsel at sentencing.

Therefore, Morris' sentence should be vacated and she should be resentenced in accordance with the correct offense level calculation. Compare, U.S. v. Smith, 103 F.3d 531 (7th Cir. 1996).

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Morris' Section 2255 motion (Doc. 116) be GRANTED, her sentence be VACATED, and she be RESENTENCED pursuant to a correct guidelines calculation.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 7th day of April, 2009.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE